Mr. DeCaeser? Yes, sir. May it please the court, my name is Tom DeCaeser. I'm from K&L Gates. I represent the appellant, Mr. Christopher Williams. At the outset, I would like to reserve two minutes of my time for rebuttal. Okay. Thank you, your honor. Your honors, we ask that this court reverse the district court and grant Mr. Williams rule 60 v. 6 motion. Help me understand why this is an extraordinary situation that requires the extraordinary kind of relief that the court has said the rule 60 v. is reserved for. Certainly, your honor. The extraordinary circumstances should be evaluated under the totality of the circumstances as ruled by this court only about a month ago in Cox v. Horne. And under the totality of the circumstances, Mr. Williams satisfies that test. There's essentially six factors that are all in his favor. First, there is a significant change in law in Martinez. Well, Mr. Sossam has conceded that your legal issue is correct in terms of the double jeopardy issue in the Martinez issue. There's no problem there that you're right that after Martinez, the second 924C I guess it is that he was sentenced to 25 years for, that's a double your life plus five. Well, your honor, I think that your question is going to what would be the end result if his habeas case were reopened and habeas was granted. But that's really not before the court at this time. Well, it goes to extraordinary circumstances though, doesn't it? Well, I think it does to a certain degree, yes, your honor. And there's two results that could happen. The first is that he could have at a minimum instead of life plus 30 years in jail, life plus five. And once he dies, the five years probably is not going to concern him then. Well, your honor, this could come into play in two instances. First is if his life sentence were ever commuted or if there were a change in law or something along those lines so that his life sentence were amended, the extra 25 years would certainly affect him in a great way. But that's a speculative thing. It doesn't have to be more certain that there will be hardship, unexpected extreme hardship I think is the kind of language that Bill 60B uses. Well, I think so, your honor. And that's where the second part comes into play. And that's the fact that the district court actually took into account his mandatory minimum sentence when sentencing him to life in prison on the first count. And so under that, based on that reasoning, it's very possible that the district court, based on the new set of circumstances, would sentence him differently on the first count. Were you aware of what the district court said about your client? Yes, your honor. I cannot imagine. I think the only thing that was concerned about the district court was that he couldn't find a way to give your client more time. He said this is one of the most horrendously, basically, one of the most horrendously dangerous people that he had dealt with in criminal justice history. And this is a very good district judge who's not known for hammering defendants. Your honors, if the district court were faced with a different set of circumstances, I don't think that it's within our knowledge of what he would have done. Let me get back to the legal issue here, if I may. Doesn't this case really turn on how we read Gonzalez and how Gonzalez grew on the Second Circuit's opinion in Harris? If we conclude that Williams' 60B motion here presents a new ground for relief, that's game set and match for you, isn't it? You lose. Yes, your honor. If it were to present a second or successive claim on the merits, then we would have to proceed. You said second or successive claim on the merits. To get to the problem and the restrictions on a second or successive claim doesn't have to go to the merits. It's just a second or successive legal argument or a second or successive petition that's being presented. No, your honor. In Gonzalez, the court described a claim as a claim on the merits. So that was where I was getting that language from. Merits as to the, not the underlying offense, but as to the 924C, the second possession charge. That's what you're talking about. Well, a claim on the merits of his underlying trial. His underlying trial or sentence? Both, your honor. Well, here we have the ineffective assistance claim that you claim it's ineffective because 2255 counsel didn't raise trial counsel's objection to the second 924C, correct? There's a layer of effectiveness, your honor. Okay. Go back to Gonzalez for a second. Didn't Gonzalez clearly state that counsel's omissions do not ordinarily go to the integrity of the proceedings and therefore would not provide a basis to overcome the Rule 60B bar? And in effect, your claim is a second or successive petition? No, your honor. In Gonzalez, the court compared negligent omissions, which would come under Rule 60B1, with what happened in Harris. They used a CF site and then they explicitly endorsed Harris. Do you think they explicitly endorsed Harris? It read to me that they used Harris as an example of how a party used Rule 60B and then found that it was not a proper use to Rule 60B to add a claim of ineffectiveness. In effect, a successive habeas petition. Your honor, I believe that they firmly did support Harris. They cited three cases in a paragraph and then I believe the next line is in paraphrasing, we agree with the holdings in these cases. Harris specifically dealt with this issue. Well, what they agreed with was virtually every court of appeals to consider the question has held that such a pleading, although labeled a 60B motion, is in substance a successive habeas petition and should be treated accordingly, e.g. Rodwell, Dunlop. We think those holdings are correct. And then they also said that these such circumstances, the circumstances you're arguing for, rarely occur in the habeas context. Yes, and I believe that they were speaking about the negligent omission as compared to the ineffective assistance of counsel. Those are two different things. A negligent omission would be something minor. An example would be misunderstanding a local rule that has been interpreted two ways or an error by a court clerk that led to an omission or a negligent error. And that was compared with the ineffective assistance in Harris. But the ineffectiveness has to go to a defect in reading from the court's opinion, some defect in the integrity of the federal habeas proceedings. Yes, Your Honor, and that's exactly what we have here. Mr. Williams was denied a fair opportunity to have his trial ineffectiveness claims raised because he just simply received ineffective assistance at the habeas level. And in addition, I think that we have to note that Martinez came after Gonzalez. And Gonzalez would be different today, you know, if it were decided tomorrow. It would have to account for Martinez and this change of law announced in that case. Before Martinez... But Martinez could have accounted for Gonzalez. It doesn't even say Gonzalez. So why should we infer necessarily that the court was doing anything to Gonzalez when it ruled in Martinez? Your Honor, that's accurate. But Martinez wasn't raised in a Rule 60B context. So for the court to have addressed Gonzalez in the 60B analysis would have been dicta. And I don't believe that the absence of dicta can show what the court was thinking in that manner. In addition, a litany of courts have now looked at Martinez' claims under Rule 60B-6. And if the reading of Gonzalez were correct, then all of those cases would essentially be dicta or meaningless. And this may go back to something we answered earlier. But if you were correct and we were to get to the merits of the Strickland argument, let's assume all that for a second. It goes back to my first question. I want to be able to show prejudice. And if you couldn't show prejudice, you can't show ineffectiveness anyway. In the absence of prejudice, it would be the fact that the sentence remains, in reality, the same, even if Gonzalez had raised the Martinez argument in the 924C, the second sentence had never been opposed. The practical result of that would have been he got the same sentence that, in reality, he gets now. Your Honor, we can't show prejudice here. But I would also like to point out that we're not raising the Strickland claim here. Well, I know you're not, but I'm just trying to think through to that point. Sure. And prejudice is shown here because under the Strickland analysis, prejudice is when the result would be different but for the attorney's error. Here, the result certainly would have been different. At a minimum, it would have been life plus 5 as opposed to life plus 30. However, as I've already noted, the district court took into account his mandatory minimum sentence and compared that to his expected lifespan in his sentencing. And so it's very possible. We don't know what the district court would have done, but it's very possible the district court would have ruled differently in his initial sentencing on the first count. So the prejudice problem is satisfied here. What we do then is, if you're right about how big the narrow exception is in Martinez, what do we do about 2255H? What happens to the restrictions that Congress put on the ability to bring a successive petition? Why wouldn't 60B then become the vehicle under the rules to file a second or successive petition that is otherwise restricted under Section 2255 and this goes to 2255H? Your Honor, the protections under 2255H would still fully apply. They just don't apply in this case. Why don't they? Because Mr. Williams' challenge goes to the integrity of the habeas proceeding. He's not raising a new claim. And this is something that in a per curiam decision by this court But if you're right about that, wouldn't any ineffectiveness claim go to the integrity of the proceeding that I do, which is a constitutional structural defect? He wasn't represented by counsel. His counsel was so ineffective, basically, that he was, the client was unrepresented at all. And then you'd have a situation where every Strickland claim raises that kind of fundamental defect. 2255H goes out the window and Rule 60B comes in instead. So you raise all of your successive petitions, not dressed in the language or dressed in the clothing of a 2255 successive petition, but as a request for relief under Rule 60B. Why wouldn't that be the result of what you're arguing? Your Honor, I believe generally that would be the result. And that ineffective assistance of habeas counsel claims would go to the integrity of the proceeding as it does here. But the result wouldn't be an opening of the floodgates to the courts, floodgates to frivolous litigation, because there'd be a number of other protections. Those under Rule 60B-6 with regard to extraordinary circumstances. And under Martinez v. Ryan, you have to prove a substantial showing of those things would be after you get in the front door. Under 2255, Congress set limitations on whether or not you can get in the front door. You're saying there's really no harm here because once you get in the front door, courts have mechanisms to dispose of frivolous claims and reach claims that are meritorious. But that still seems to me to have the effect of a judicial repeal of 2255H. No, Your Honor. This would simply be a Rule 60B-6 motion filed to a district court. And instead of simply dismissing it because under Gonzales it raises a new successive or second claim, they could look to the factors under Rule 60B-6, Martinez, and Rule 60C-1 as well. And all of those would provide adequate protection. And this is, I believe that this general argument was addressed by the Supreme Court in Martinez where they were discussing the, Your Honor, I'm almost out of time. They noted that they were, the state courts were worried, the states were worried that this would have a massive effect on the number of claims that could be raised in 2254. The Supreme Court overlooked that and said essentially, that isn't a worry here because of all the other protections. Thank you, Your Honors. Thank you very much. Good morning, Your Honors. May I please support Robert Zosmer on behalf of the government? Let me start with a very existential question. Why are we here? There you go, Tony Cunegar again. Who do you play for? The Bears, right? That's how I lined back up with the Bears. Well, you anticipated, Your Honor, I was going to start existentially as well and say that this is a very interesting appeal in that there's virtually nothing at stake for the parties in... This is an interesting appeal? It is because there's virtually nothing... Did you ever read Bleak House? Excuse me? Did you ever read Bleak House? Yes, of course. Which one? The edge of your seat through all 800 pages. Of course. Fascinating book. And of course, remember there are another 35 defendants in this case besides Mr. Williams, so this case is very much like Bleak House. We have other matters still pending in front of Judge Delzell. But in this particular case, Your Honor, there is nothing at stake for the parties. There is everything at stake regarding the important legal issues that are presented. If we got to it, why wouldn't it be dicta? I mean, if you've conceded and you're pending for that, the double jeopardy issue. So under 60B it seems to me the easiest way to resolve this is simply say it's not extraordinary circumstances under 60B and not even get to the morass of 2255 and 2255 page, that procedural path you want us to walk down to give you the presidential opinion that you want. Why do you think the court can do that? And that would be a perfectly valid result that I would support. The problem is in me arguing the case and presenting the case. I can't suggest that as the only basis. I couldn't say to the district court, look, forget about the fact that you have no jurisdiction under 2255. Just reach a decision on the merits that it wouldn't matter. I think the court can do that. A court can say we're not going to reach the difficult jurisprudential issues because we see at the end of the day this isn't going to work. But I have to take a consistent position in the cases that present this issue. In the cases that present the question of does Martinez give you a second 2255 for the effectiveness claims. So you're here and we're putting those assignments to get you off the hook. Is that what you're saying? No, I guess I'm saying we're stuck here because... Well, you're stuck here. Well, I'm stuck here. We just work on that bill. No, I'm stuck here too. As I've often said, I'm honored to be here. So I shouldn't say that I'm stuck. But you always smirk when you say that. No, I truly am. But Your Honor, the issue for us when it was presented to us, just agree. Just go ahead and agree. Take away the 25 years. It doesn't matter. For me to do that, I need to be able to say to the court there's a jurisdictional basis to agree. And I have to be consistent. If I were to just agree in this case, then the next defendant comes along and says, well, what about that guy Williams? You let the court rule on that on the merits and deny it? You need to allow that for me too. And then, of course, we have a different issue because it's not somebody who's going to serve his life in prison anyway. Do we even have to decide whether Martinez should be extended to federal prisoners? I think one simple narrow way to do it, as Your Honor suggested, I think in one of the questions, is simply to say this is a successive claim under 2255. The equivalent of it. Exactly. And that ends it without a substantial discussion of Martinez. And on that point, I do want to correct a mistake that was in our brief. I don't think our brief served the court very well with regard to the mention of Harris. And I apologize for that. Our brief is correct in stating that in Gonzalez, the Supreme Court clearly defines this as a successive claim subject to 2255 where you allege an omission of your habeas counsel and thus ineffective us. What we said that was inaccurate was we It's in it. It distinguished Harris. It's a CF site, which of course means compare it to Harris, where they did treat it as a defect in the proceedings. But the Supreme Court's language, which Judge Smith quoted earlier, could not be clearer. It uses Harris as an example of the type of claim that we have here. It then says that other courts have held this is a successive claim, whether in reality or just equivalent. And we agree with those holdings, that you cannot do this. That is, Your Honor, the simple, narrow way to define this. That's what if you if we agree with you, just a judgment order that cites to Gonzalez and imprints. Let's see. Let's say they're brought into 16B. It is a successive petition of 28 U.S.C. 2215, 2255. That's it. That's right. And then that's essentially what the Ninth Circuit did. And I can't pronounce this, but I think it's one of the few federal cases any of us have cited, because all of this is state litigation regarding procedural default. But that's what the Ninth Circuit did. It just said, second a successive claim, you're raising a new ineffectiveness claim, a new merits claim. Can't do it, because it's not allowed by 2255H, and that's the end of the matter. And that certainly is the clear, straight direction here. And I have to disagree with my new friend, Mr. DeCesar, about how Martinez affects Gonzalez. Not only does Martinez not cite Gonzalez, but this court, of course, does not have the authority to ignore Gonzalez. He suggests that Gonzalez might be decided differently if it were decided today. That's not something that a court at the next appellate level can say. Gonzalez is clearly on point. We're bound by it. If the Supreme Court ever wants to say one day that they now think differently, they will. But right now, Gonzalez is very clearly on point here. And what we're dealing with is a successive petition. So from your point of view, we should not try to infer from Martinez and Trevino all of the points they made about the importance of effective assistance and how it's a critical thing, that we shouldn't infer that that's where the Supreme Court would go for a 2255 petition. Exactly. Now, the Supreme Court has – what this would ultimately get to, as we point out in our brief, is either a right to counsel in 2255 proceedings or a new exception that would get us to 2255 petitions. Both are squarely contrary to the law of federal habeas. So it would be a profound change that probably only the Supreme Court or Congress could direct. And so, yes, the mechanism is there. The structure is there. If someone wants to look at Martinez and what it says about the usefulness of having counsel to develop a new ineffectiveness claim, perhaps Congress could be persuaded by that. Perhaps the Supreme Court one day might try to find a way to change things. But that's a profound change. So if Mr. Williams – if we were in a state court and Mr. Williams was a state defendant and you were a state prosecutor, he would get the benefit of Martinez. Oh, absolutely. But since he's a federal defendant and we don't have procedural default, we have – he's using Rule 60B as his avenue. Rule 60B is blocked by Gonzales. Exactly. And what Martinez, of course, is all about – and this Court has written so much about the difficult interplay when you have state convictions come into federal court – it's all about this extra level of federal review that's exclusively given to state prisoners to assure that their federal constitutional rights are protected. And we have all these doctrines about how to play that out with procedural default and comedy and all the different things. And that's where Martinez comes from. Martinez assures that if your lawyer was ineffectiveness on your first habeas in not raising an ineffectiveness claim regarding trial counsel, we're going to give you a forum in federal court. That's not going to – procedural default is not going to stop that circumstance. Taking that and trying to apply it to federal habeas where the prisoner always has the right to raise ineffectiveness in a first claim and have his federal rights vindicated is just taking a square peg and trying to slam it into a round hole because it just – we're dealing with different doctrines and different procedures, different courts. And so it is very much a state matter. In looking at what would happen in federal court if we do slam that square peg is that what we're dealing with here are claims of ineffective assistance of counsel. This is the bread and butter of habeas. On habeas, you're only allowed to present constitutional claims. And therefore, over 90% of your objections are presented in the framework of ineffectiveness. You may be saying that there was an error in my sentence, which is not constitutional. So claimants phrase it as they violated my Sixth Amendment right to counsel because counsel was ineffective. And now I have a constitutional claim. So almost every habeas claim is ineffectiveness. And what this would do – if you take Martinez and somehow find that this whole procedural default thing comes over to federal law, then you've just completely changed federal habeas. You're giving people two opportunities to come in and allege ineffectiveness when there's only one. Or you're going to just – When Congress only intended one. And Congress couldn't have been clearer. And Congress put such a severe restriction that's virtually never met, that you either have to have new evidence of innocence or you have to have a new right of constitutional law made retroactive by the Supreme Court itself. We can count on one hand in this circuit the number of people since 1996 when this law was enacted who've met that standard. So Congress clearly wanted to limit you to one try. And also the law has always been that you do not have a right to counsel on habeas. So you're taking Martinez, which is all about procedural default in respect of the state system and sovereignty, and it's a muddle when you try to do it in federal court. And then it just has these profound effects that change the very nature of habeas. So that's our Martinez argument. That's why it just doesn't work. Can one day might Congress say, yes, we read Martinez and we're persuaded that people should have a right to counsel, even if it's not afforded by the Constitution on habeas. Of course they could do that. I don't anticipate it, but they could certainly do it. But I don't think it's appropriate for this or any other federal appellate court to be rewriting the Constitution in that fashion. There's one other argument I wanted to touch on. Obviously our argument is in two levels. Level one is that you just can't do this. This is a second or successive new ineffectiveness claim. Level two is what Judge McKee started with, which is if this were a valid 60B6, our position, of course, is it's not extraordinary and the defendant didn't exercise diligence. Just one point on that, unless the court has further questions, is Mr. DeCesaro suggested, and I think it was a new argument this morning, that while this might have affected the life sentence otherwise, that was not a remedy that Mr. Williams asked for in this 60B6 motion. It was exclusively addressed to getting rid of this 25-year sentence on this count. And besides that, we know the answer. I mean, Judge Dalzell not only described him as the most remorseless killer, which of course he was, but actually gave an express direction to the Bureau of Prisons to say, to the officers who need to now take care of him, to say, you need to know he is the most remorseless killer who has no regard for human life. That the odds that this sentence was ever going to be anything but life imprisonment are nil and they still are nil. So from your point of view, even though he would, quote, suffer, close quote, with a potentially unconstitutional conviction on the second 924C, from your point of view, that is not extreme hardship. It's not. And in fact, it's no hardship at all. The life sentence has been affirmed at every level. And on habeas. And it's not being challenged right now. That life sentence is final. It's not being commuted. If it were, which I can never imagine, but the President of course could address all of the circumstances at that time. But right now, there is no consequence from this. Of course, we all regret. We have one life to live. And Mr. Williams, by taking the life of another man, will serve his in prison. And you think it's a, because there's a case called Tann, you probably know it because you know all the Third Circuit precedent, I'm sure, in the criminal area, where a defendant was convicted on two different provisions of 922G based on his status. I think one was like a drug addict and one had been a felon. And the court there reviewing on plain error found his substantial rights were affected by having what was a consecutive sentence, but suffering, close quote, open quote, under the second conviction. Is it your view that the substantial rights test differs from Strickland prejudice and is also different from extreme hardship under 60 day? It does. And I think your Honor's analogy is a good one. And also, there's a Third Circuit's case on 922G involving firearms and ammunition and charging the same thing in the same case. The big difference, of course, is that that person does have an extra penalty from having multiple convictions, usually a special assessment. But this court has said that's enough, even if it's a concurrent sentence. The huge difference here is that if you apply 60B6, and of course, my primary argument is that you shouldn't. But if you get to 60B6, what this court has said over and over, most recently in Cox, is it's an equitable doctrine. We're not dealing with Strickland or plain error. We're dealing with the court's equitable power to remedy a mistake. And it should look at the whole constellation of factors. And if you look at this equitably, I think you have to say, as Judge McKee maybe suggested, why are we here? Because it's just not going to affect the sentence. Unless the court has further questions, I'll rest on that. Thank you very much, Your Honor. Your Honors, I'd like to address two points raised by the government. The first is the government's argument that this would be fitting a square peg into a round hole. That argument misses the mark, because really what we're looking at here is how Martinez will manifest itself in the federal system. Certainly in state proceedings, it would manifest itself through procedural default doctrine. Here, it would manifest itself through Rule 60B6, which is a grand reservoir of equitable power. Martinez was an equitable decision, and that's how courts should apply it. In addition, the government noted that there's nothing at stake here. But that just simply isn't the case. First, there's the 25-year sentencing enhancement on Mr. Williams, and there's the potential that the district court could rethink the life sentence given a new set of circumstances. Based on this, there's certainly a finding of extraordinary circumstances here. Mr. Williams would be fully deprived of a right to raise this constitutional claim if he's not able to reopen his habeas proceeding. It's over for him if he can't do this. It's interesting the way you just phrased that. You said, if he's not able to open his habeas proceeding, he's not going to be able to get a second or successive habeas petition. No, Your Honor. We would like to reopen his habeas proceeding so that he can bring that petition in the first place. He was deprived of that opportunity by his ineffective assistance of habeas counsel. And that's exactly what the Martinez case was concerned with, with protecting these bedrock rights to have effective assistance at trial. And that was the basis of Martinez, and the application of that in the federal system would be through Rule 60-B-6. Thank you, Your Honor. Thank you. Mr. DeSouza, I want to thank you for voting on this case. Yes, Your Honor. I want to thank you very much for taking the case on. My guess is that you're not the person at the firm who makes these decisions, but you conveyed the court's gratitude and thanks to whomever that may be, he or she, for taking the firm's case. I'm happy to be here. Thank you.